## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE  DIVISION

RMD Holdings, Ltd d/b/a                                    Civil Action No. 15-00316
Nationwide Construction Group

versus                                                      Judge Robert G. James

HD Supply Construction Supply,                Magistrate Judge Carol B. Whitehurst
Ltd, et al

## REPORT AND RECOMMENDATION

Before the Court, on referral from the District Judge, is a Motion for Summary

Judgment filed by defendants, HD Supply Construction Supply, Ltd., White Cap

Construction Supply, Inc. and HD Supply, Inc. (collectively referred to as "HD

Supply") [Rec. Doc. 17], plaintiff, RMD Holdings, Ltd. d/b/a Nationwide

Construction Group's ("RMD") Memorandum in Opposition [Rec Doc. 19] and HD

Supply's Reply thereto [Rec. Doc. 20]. For the reasons that follow, the undersigned

will recommend that the Motion be granted.

### *I. Background*

On or about August 27, 2010, RMD entered into an agreement with HD

Supply, in which RMD agreed to pay all invoiced amounts for products sold by HD

Supply to RMD and by which HD Supply agreed to extend credit to RMD for those

purchases ("Credit Agreement"). *R. 17, Exh. 1, Declaration of Jones, ¶ 4; Exh. 2,*

*08/27/2010 Credit Application*.

Under the Credit Agreement, RMD agreed that HD Supply's Terms and Conditions applied to all sales made to RMD by HD Supply. *R. 17-2, Declaration of Jones, ¶ 5; R. 17-3,¶ 2.* The TERMS AND CONDITIONS OF SALE stated:

> All sales to Buyer are subject to these terms and Conditions of Sale, which shall prevail over any inconsistent terms of Buyer's purchase order or other documents. Additional or different terms and conditions in any way altering or modifying these terms are expressly objected to and shall not be binding upon [HD Supply] unless specifically accepted in writing by [HD Supply's] authorized representative.

*R. 17-3, Credit Agreement, ¶ 2*. Paragraph 5 of the Credit Agreement further stated:

> ... [HD SUPPLY] ASSUMES NO RESPONSIBILITY WHATSOEVER FOR HD SUPPLY'S INTERPRETATION OF PLANS OR SPECIFICATIONS PROVIDED BY [RMD] AND [RMD'S] ACCEPTANCE AND USE OF GOODS SUPPLIED THEREUNDER SHALL BE PREMISED ON FINAL APPROVAL BY BUYER OR BY BUYER'S RELIANCE ON ARCHITECTS, ENGINEERS, OR OTHER THIRD PARTIES RATHER THAN ON [HD SUPPLY'S] INTERPRETATION. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, IN NO EVENT, WHETHER IN CONTRACT, WARRANTY, INDEMNITY, TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, ARISING DIRECTLY OR INDIRECTLY OUT OF THE PERFORMANCE OR BREACH OF THIS AGREEMENT, SHALL [HD SUPPLY] BE LIABLE FOR (a) ANY INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, CONSEQUENTIAL OR SIMILAR DAMAGES SUCH AS LOSS OR USE, LOST PROFITS, ATTORNEYS' FEES OR DELAY DAMAGES, EVEN IF SUCH DAMAGES WERE FORESEEABLE OR CAUSED BY [HD SUPPLY'S] BREACH OF THIS AGREEMENT . . . ALL CLAIMS MUST BE BROUGHT WITHIN ONE YEAR OF ACCRUAL OF A CAUSE OF ACTION.

*R. 17-3, ¶ 5.*

2

RMD was the prime contractor on Louisiana State Project No. 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, the Verot School Road Project in Lafayette, Louisiana ("Project"). The Project, started on October 10, 2011, involved the building of a concrete coulee for the Louisiana Department of Transportation and Development. On January 17, 2013, HD Supply submitted a bid of $.43 per pound to furnish reinforcing steel or "rebar" for the Project. *R. 19, Declaration ¶ 5, Exh. A*. Pursuant to the Credit Agreement, HD Supply provided rebar to RMD for the Project. *R. 17-2, Declaration of Jones, ¶ 6*.

RMD alleges it discovered in September 2013, that HD Supply had overestimated and oversupplied the amount of rebar for the Project based on the plans and specifications provided to HD Supply by RMD. *R. 17-4, Depo of RMD, 40:13-20; R. 1, ¶ III.c*. RMD represents that "[b]etween discovery of the problem and August 28, 2014, RMD had numerous meetings, e-mail exchanges and telephone calls" with HD Supply about the oversupplied rebar. HD Supply picked up the additional rebar from the Project which, based on RMD's calculations, was 202,364 pounds. *R. 17-4, Depo of RMD, 49:11-12*. HD Supply states it refused to pick up any additional rebar from the Project site because it was in "unsaleable condition." RMD alleges that HD Supply left 7000 pounds of rebar at the site.

HD Supply states that because of the condition of the rebar when it was retrieved, it could only be sold for scrap at $.10 per pound. Although the scrapped

rebar was valued at only $20,936.40, in October 2014, HD Supply contends it issued a credit to RMD for $39,256.81—the amount received for the scrapped rebar plus the total amount remaining on RMD's credit balance owed to HD Supply. RMD contends it "rejected" HD Supply's credit for $39,256.81.

RMD filed this lawsuit on February 13, 2015. RMD claims that HD Supply breached the contract between them and demands full reimbursement for the returned rebar, as well as additional expenses including labor and equipment costs. RMD further claims that HD Supply's actions violated the Louisiana Unfair Trade Practices Act ("LUTPA"). HD Supply filed the Motion before the Court on February 12, 2016.

*A. Contentions of the Parties*

HD Supply initially contends that RMD's claims are time-barred under the terms of the Credit Agreement which states that all claims must be brought within one year of accrual of a cause of action. HD Supply further contends there is no breach of contract claim because the limitation of liability clause in the Credit Agreement provides that HD Supply cannot be held liable for any interpretation of plans or specification provided by RMD. It further contends RMD has no claim for damages because RMD has been compensated for the alleged oversupply of rebar through credits on the Project. Finally, HD Supply argues that RMD cannot assert a LUTPA claim because Florida rather than Louisiana law applies, and RMD has no evidence

4

that HD Supply violated LUTPA.

RMD responds that Florida law, which applies pursuant to the contract, precludes the shortening of the statute of limitations period by contract. Because Florida has a five year statute of limitations for contract, RMD's claims are timely. Also, RMD argues HD Supply breached the terms of the contract in that: (1) the Purchase Orders for supply of the rebar modified the Credit Agreement; (2) the exculpatory clause and the limitation of damages is merely a warrant provision; and (3) under Florida law only consequential damages may be excluded and RMD's complaint is for direct damages—reimbursement of the rebar overage. As to its LUTPA claim, RMD asserts the Court should construe its claim as a Deceptive and Unfair Trade Practices Act ("FDUTPA") claim under Florida law.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann,*

954 F.2d 1125, 1132 (5ᵗʰ Cir. 1992); see also FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be ... disputed must support the assertion by ... citing to particular parts of materials in the record ..."). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5ᵗʰ Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5ᵗʰ Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Only disputes over facts that might affect the outcome of the suit under governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not

be considered by a court in ruling on a summary judgment motion. *Id.*

### III. Law and Analysis

The parties agree that Florida law applies to the Credit Agreement pursuant to

paragraph 12 of the Credit Agreement:

> This Agreement and the account and business relationship between Buyer and Seller shall be governed by and conducted in accordance with the laws of Florida without regards to conflicts of laws....

*R. 17-3, ¶ 12.* Under Florida law, "[c]ontract interpretation begins with a review of

the plain language of the agreement because the contract language is the best

evidence of the parties['] intent at the time of the execution of the contract." *Spungin*

*v. GenSpring Family Offices, LLC*, 883 F.Supp.2d 1193, 1198 (S.D.Fla.2012)

(quoting *Taylor v. Taylor*, 1 So.3d 348, 350 (Fla. 1st DCA 2009)). "In the absence of

an ambiguity on the face of a contract, it is well settled that the actual language used

in the contract is the best evidence of the intent of the parties, and the plain meaning

of that language controls." *Spungin* at 1198 (quoting *Acceleration Nat'l Serv. Corp.*

*v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So.2d 738, 739 (Fla. 1st DCA 1989)). If

a court determines that the terms of a contract are ambiguous, only then is "parol

evidence [ ] admissible to explain, clarify or elucidate the ambiguous terms." *Id*.

(quoting *Taylor* at 350). "[T]he words should be given their natural, ordinary

meaning," and "where the language is plain a court should not create confusion by

adding hidden meanings, terms, conditions or unexpressed intentions." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir.1996).

*A. Whether RMD's Claims Are Untimely*

HD Supply argues that RMD's claims are untimely because the Credit Agreement signed by RMD on August 27, 2010 shortened the applicable statute of limitations to one year. Since RMD admits it discovered the alleged over-delivery of rebar in September 2013 and the lawsuit was not filed until February 13, 2015, HD Supply contends RMD's claims are time-barred.

As provided above, Paragraph 5 of the Credit Agreement, Terms and Conditions of Sale, provides in pertinent part, "All claims must be brought within one year of accrual of a cause of action." The same paragraph states that Florida law applies to the agreement. *R. 17-3, ¶ 5.* RMD argues that under Florida law, the shortening of the applicable prescriptive period by contract is prohibited. Fla. Stat. § 95.03 provides:

> Any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void.

Fla.Stat. § 95.03. Thus, RMD asserts, as Florida's five year statute of limitations applies, this lawsuit was timely filed.

HD Supply argues that the choice of law provision in the Credit Agreement

8

incorporates only substantive law—not procedural law. It contends that because RMD filed suit in Louisiana, Louisiana's procedural rules regarding prescription apply and Louisiana Civil Code Article 3471 allows the shortening of the prescriptive period under contract. *See* La.Civ. Code art. 3471, revision Comment (b).

Pursuant to paragraph 12 of the Credit Agreement, Florida is the parties' chosen forum and is the law which applies to the contract claims in this case. "Whether the application of the statute of limitations involves substantive or procedural law for choice of law purposes is determined by Florida law because Florida is the forum state." *Delrey v. Capital One Bank*, 2009 WL 5103229, at *2 (Fla.Cir.Ct.,2009)[1] (citing *Siegel*, 920 So.2d at 93). Under Florida law, a choice of law provision applies only to substantive law, not procedural law. *Siegel v. Novack*, 920 So.2d 89, 93 (Fla. 4th DCA 2006). The  Florida Supreme Court has held that "statute of limitation choice of law questions [should be treated] the same as 'substantive' choice of law questions ..." *Delrey,* 2009 WL 5103229, at *2 (quoting *Merkle v. Robinson*, 737 So.2d 540, 542 (Fla.1999); *see also Fulton County Administrator v. Sullivan*, 753 So.2d 549, 553 (Fla.1999) ("statutes of limitations are to be treated as substantive law." ), *Perez v. Fedex Ground Package Systems, Inc.*,

---

[1] HD Supply cites *Delrey* as applicable jurisprudence. As in this case, *Delrey* involved a credit agreement with a choice-of-law provision in which the court had to determine whether the statute of limitation was a substantive or procedural choice of law question. *Id.*

587 Fed.Appx. 603, 606 (11th Cir. 2014) ("Florida courts consider the statute of limitations to be substantive rather than procedural"). Therefore, it is well established that the application of the statute of limitations involves a substantive right under Florida law. *Delrey,* 2009 WL 5103229, at *2.

As provided in the Credit Agreement, the parties chose  Florida as the forum in this action. Contrary to HD Supply's contentions, because the applicable statute of limitations involves the application of a substantive right under Florida law, it is the substantive law of Florida which must be examined concerning the application of the appropriate statute of limitations. *See Perez v. Fedex Ground Package Systems, Inc*., 587 Fed.Appx. 603, 606 (11th Cir. 2014) (the statute of limitations of the parties' contractually chosen forum applies). As Florida law prohibits the shortening of the applicable prescriptive period by contract, RMD's lawsuit is timely.

*B. Whether HD Supply Breached its Contract with RMD*

In order to prevail on a breach of contract action under Florida law, the plaintiff must prove (1) existence of a contract; (2) breach of the contract; and (3) damages as a result of the breach." *Vega v. T-MobileUSA, Inc*., 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law). RMD alleges that HD Supply breached the Credit Agreement by misinterpreting the plans and specifications of the Project and thereby oversupplied the rebar. *R. 1, III(c-h).* Specifically, RMD contends that HD Supply

incorrectly determined from the Project documents the amount of rebar that was needed for the Project, and thereby ordered an oversupply. *R. 17-4, p. 26,l. 25–p. 28, l. 8.*

HD Supply asserts that the limitation of liability terms and conditions contained in the Credit Agreement clearly and unequivocally state that HD Supply did not assume any responsibility for the acts for which RMD seeks damages in this matter. Paragraph 5 of the Credit Agreement states, "[HD Supply] assumes no responsibility whatsoever for [HD Supply's] interpretation of plans or specifications provided by [RMD] . . . . in no event, whether in contract, warranty, indemnity, tort (including, but not limited to, negligence), strict liability or otherwise, arising directly or indirectly out of the performance or breach of this agreement, shall [HD Supply] be liable for (a) any incidental, indirect, punitive, special, consequential or similar damages such as loss of use, lost profits, attorneys' fees or delay damages, even if such damages were foreseeable or caused by [HD Supply's] breach of this agreement. . . ." *R. 17-3, ¶ 5.*

"Under Florida law, exculpatory provisions which attempt to relieve a party of his or her own negligence are generally looked upon with disfavor, and Florida law requires that such clauses be strictly construed against the party claiming to be relieved of liability. Such provisions, however, have been found to be valid and

enforceable by Florida courts where the intention is made clear and unequivocal."
*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1167 (11th Cir. 2009) (quoting *Sunny Isles Marina, Inc. v. Adulami*, 706 So.2d 920, 922 (Fla.Dist.Ct.App.1998)); *see also Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974 So.2d 565, 568 (Fla.Dist.Ct.App.2008) (" '[Exculpatory] clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.'"). Where language specifically alerts the indemnitor that the indemnitee's own negligence is part of the agreement, Florida law will allow the agreement to be enforced. *Florida Power & Light Co. v. Mid-Valley, Inc.*, 763 F.2d 1316, 1319 (11th Cir. 1985).

Florida law would give effect to the provision at issue here as the contractual language is clear and unequivocal. *Cooper*, 575 at 1167; *Equality Life Style Prop., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir.2009) (In construing the terms of the contract, the court will give effect to the plain language when that language is clear and unambiguous.). The agreement provides that HD Supply "assumes no responsibility whatsoever for [HD Supply's] interpretation of plans or specifications" and "in no event . . .shall [HD Supply] be liable."

### 1. Final Approval by RMD

RMD argues that because the plans or specifications were technically provided by the State of Louisiana Department of Transportation, a third party, rather than RMD, the provision in the contract, "on final approval by [RMD] or by [RMD's] reliance on architects, engineers, or their third parties rather than on [HD Supply's] interpretation" suggests that RMD did not have final approval over the Project and therefore the exculpatory clause is unenforceable. RMD's strained argument ignores the fact that Andre Demil, its Rule 30(b)(6) representative, testified that the plans and specifications were provided to HD Supply by RMD. *R. 17-4, p. 27, l. 25 – p. 28, l. 8.* Moreover, RMD tacitly accepted the rebar when it began using the material in the construction Project at some point after it was delivered on January 17, 2013. *R. 19-1, Exh. B.* Whether or not the limitation of liability provision would apply if the plans and specifications originated from the State of Louisiana is irrelevant.

### 2. Purchase Orders

Despite the language of the aforesaid provision, RMD disputes that the terms of the Credit Agreement control. RMD first argues that the purchase orders subsequently issued by RMD superseded all prior negotiations and agreements, including the Credit Agreement. *R. 19-1, Exh. B.* RMD cites an unsigned Purchase Order dated January 17, 2013, issued by RMD to HD Supply which states, "By

accepting this purchase order, Vendor acknowledges that this purchase order represents the entire agreement between Buyer and Vendor and supersedes all prior negotiations and agreements..." *Id.*

Contrary to RMD's contentions, Paragraph 2 of the Terms and Conditions of the Credit Agreement provides:

> . . . Additional or different terms and conditions in any way altering or modifying these terms are expressly objected to and **shall not be binding upon [HD Supply] unless specifically accepted in writing** by [HD Supply]'s authorized representative. **No modification or alteration or these terms shall result by [HD Supply's] shipment of goods following receipt of Buyer's purchase order**, or other documents containing additional, conflicting, or inconsistent terms. . .

*R. 17-3, ¶ 2.* The above provision expressly limits acceptance to HD Supply's terms and conditions under the Credit Agreement and precludes any additional terms or modification of the Credit Agreement unless confirmed through a subsequent document accepted by HD Supply in writing.

As noted above, the Purchase Order is unsigned. RMD has submitted no evidence that HD Supply signed or accepted RMD's unilateral attempt to modify the Terms and Conditions of Sale in writing. Accordingly, RMD's argument related to the Purchase Order fails.

### 3. Warranty Agreement

Next, RMD contends that when paragraph 5 is read in full and in context, it "is

clear that ¶ 5 is only a warranty provision that purports to shift the responsibility for breaches of warranties." *R. 19, p. 7.* RMD refers to the initial language of paragraph 5 which states that "RMD shall seek recourse exclusively from manufacturers in connection with any defects in or failure of goods," and then refers to HD Supply's lack of liability "whether in contract, warranty, indemnity, tort ... for ... (b) any claim that properly is a claim against the manufacturer...." Rather than reading paragraph 5 "in context," RMD picks and chooses the parts it wants to apply and ignores the meaning of the overall provision which exonerates HD Supply from liability from its "interpretation of plans or specifications" for the materials it supplies, "whether in contract, warranty, indemnity, tort (including, but not limited to, negligence), strict liability or otherwise, arising directly or indirectly out of the performance or breach of this agreement. . . ."

Under Florida law, courts are to interpret the terms of a contract to give meaning to all of its provisions. *USB Acquisition Co., Inc. v. Stamm*, 660 So.2d 1075, 1080 (Fla. 4th DCA 1995) ("If clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible.") (citing *Triple E Dev. Co. v. Floridagold Citrus Corp.*, 51 So.2d 435, 438–39 (Fla.1951)); *Ceradini v. IGT Services, Inc.*, 959 So.2d 348, 351 (Fla. 3d DCA 2007)("a cardinal principal of contract construction that agreements are to be

interpreted so as to give meaning to all their provisions.").

When interpreting contracts under Florida law, courts "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so. Instead, courts must strive to interpret a contract in such a way as to give meaning to all provisions while doing violence to none." *Bethany Trace Owners' Ass'n, Inc. v. Whispering Lakes I, LLC*, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014); *see also City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) ("[W]e rely upon the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof.").

Considering the language of paragraph 5 and the foregoing jurisprudence, the Court must reject RMD's argument that the provision is only a warranty agreement which shifts the responsibility for breaches of warranties. Thus, the Court finds that the limitation of liability language in paragraph 5 of the Credit Agreement is clear and unambiguous and capable of only one reasonable interpretation—RMD has no claim, either in breach of contract or negligence, against HD Supply under the terms of the Credit Agreement for the oversupply of rebar in this case. *Kwok v. Delta Air Lines, Inc.*, 578 Fed. App'x 898, 900 (11th Cir. 2014) ("[W]here the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, a court is required to enforce the contract according to its clear terms.").

16

*4. Damages*

HD Supply contends that RMD's claims for consequential damages related to the alleged over-delivery of rebar, including labor and equipment costs, are excluded under the terms of paragraph 5 the Credit Agreement, as follows:

> In no event, whether in contract, warranty, indemnity, tort (including, but not limited to, negligence), strict liability or otherwise, arising directly or indirectly out of the performance or breach of this agreement, shall [HD Supply] be liable for (a) any incidental, indirect, punitive, special, consequential or similar damages such as loss or use, lost profits, attorneys' fees or delay damages, even if such damages were foreseeable or caused by [HD Supply's] breach of this agreement. . . .

Florida's version of the UCC, Fla. Stat. § 672.719 ( UCC § 2–719), permits a party to exclude liability for consequential damages. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166 (11th Cir. 2009) (Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). Fla. Stat. § 672.719 provides in pertinent part:

> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

*Id.*

In construing the terms of the contract, the court will give effect to the plain language when that language is clear and unambiguous. *Equality Life Style Prop., Inc.*

*v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir.2009). Here, the waiver of consequential damages in paragraph 5 of the Credit Agreement disclaims liability under both negligence and breach of contract theories for consequential damages. It is clear and unambiguous such that an ordinary person reading the provision would understand that he was contracting away the right to recover consequential damages from the other party. The waiver is clearly written and unequivocal. It contains no limitation for when it applies. The waiver is valid and enforceable under Florida law. *See  Cooper v. Meridian Yachts*, 575 F.3d 1151, 1167 (11th Cir.2009) (applying Florida law on waiver of damages).

RMD continues to argue that § 672.719 makes a clause purporting to prevent *any* damages from a breach uneforceable. RMD cites the commentary of § 672.719 which indicates that there must be a fair remedy for breach of contract. Here, the damages' clause does not preclude *any and all* damages, only recovery of "incidental, indirect, punitive, special, consequential or similar damages." As such, the clause is not rendered unenforceable.

As to damages in this case, under Florida law (as discussed above) parties may limit or modify the remedies available to them in the event of a breach of their agreement. Here, the Credit Agreement clearly provides that HD Supply did not assume liability for any misinterpretation of the plans and specifications as alleged

18

in RMD's breach of contract claim. Thus, as there can be no breach of contract liability, potentially available damages are not triggered.

C.   *Whether HD Supplies Violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)*

In its Opposition Memorandum RMD contends that HD Supply's actions violated FDUTPA. RMD, however, has not brought a claim under the Florida statute. Instead, even though RMD asserts Florida law applies in this action, it alleges a deceptive trade practices action under the Louisiana Unfair Trade Practices Act ("LUPTA"). The record provides that RMD never amended its Complaint to assert a FDUTPA claim under Florida law.

LUPTA is substantively identical to FDUTPA—both proscribing "unfair methods of competition and unfair or deceptive acts. Louisiana courts have articulated the standard for liability under LUTPA almost identically to that articulated by the Florida courts under FDUTPA[2]: the acts prohibited must be "unethical, oppressive, unscrupulous or substantially injurious." *PNR, Inc. v. Beacon*

---

[2] "The elements of a cause of action under the LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor[,] or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss." *Who Dat Yat LLC v. Who Dat ? Inc.*, 2011 WL 39043, at *3 (E.D.La. Jan. 4, 2011).

In order to state a claim under FDUTPA, a plaintiff must establish three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla.Dist.Ct.App.2006)

*Prop. Mgmt., Inc.,* 842 So. 2d 773, 777 (Fla. 2003) (acts prohibited under FDUTPA must offend public policy" and be "immoral, unethical, oppressive, unscrupulous to consumers." *e-ventures Worldwide, LLC v. Google, INC.*, 2016 WL 2758889, at *8 (M.D.Fla., 2016) (citing *PNR* at 777).

Regardless of whether RMD asserts an unfair trade practice claim under LUTPA or FDUTPA, RMD's claim is inadequate because it fails to establish any unfair or deceptive conduct that rose to the level required to find such a violation. RMD contends that HD Supply's "unethical and unscrupulous" act occurred when HD Supply allegedly breached its contract with RMD by first agreeing to take back the rebar, then reneging and selling it for scrap without RMD's knowledge or permission. Contrary to this claim, RMD's own 30(b)(6) representative, Andre Demil, stated in his deposition that he had no evidence HD Supply deceived RMD in providing the rebar. *R. 17-4, p. 57, l. 24 – p. 58, l. 2*.

RMD states that a genuine issue of disputed fact remains because *HD Supply* in "no way shows that it did not act unethically and unscrupulously." RMD appears to confuse the burden of proof under Rule 56. Rule 56 states that if the dispositive issue is one on which the nonmoving party (RMD) will bear the burden of proof at trial, the moving party (HD Supply) may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.

20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). RMD has failed to assert any evidence to identify a genuine deceptive and unfair trade practice much less establish that HD Supply acted "immorally, unethically or unscrupulously" in its dealings with RMD.

As alleged in its primary claim, RMD asserts that HD Supply breached the Credit Agreement. A breach of contract, without allegations of deceptive or unfair acts, does not give rise to a claim under FDUTPA or LUTPA. *See PNR, Inc.*, 842 So.2d at 777 n. 2 (Under FDUTPA, an unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"); *Levine v. First Nat. Bank of Commerce*, 948 So.2d 1051, 1065 (La. 2006) (LUTPA explains that a trade "practice is unfair when it offends established public policy" and is "unethical, oppressive, unscrupulous, or substantially injurious."). RMD falls far short of alleging conduct by HD Supply which could be deemed immoral, unethical, oppressive, or unscrupulous. Thus, any claim under LUTPA or FDUTPA should be dismissed.

*IV. Conclusion*

For the foregoing reasons, it is recommended that HD Supply's Motion For Summary Judgment [Rec. Doc. 17] be granted and RMD's claims against it be dismissed..

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed this 9th day of June, 2016 at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**